# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| PATRICK BRUCE,<br>　　Petitioner, | §<br>§<br>§ | |
| v. | § | EP-09-CV-307-KC |
| | § | |
| WARDEN M. TRAVIS BRAGG,<br>　　Respondent. | §<br>§<br>§ | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is Petitioner Patrick Bruce's *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241. Therein, Bruce, a federal prisoner currently incarcerated at the Federal Correctional Institution–La Tuna in Anthony, Texas challenges a prison disciplinary for possessing a cellular telephone.[1] Respondent maintains Bruce has failed to exhaust his administrative remedies and is not entitled to relief.[2] After reviewing the record and for the following reasons, the Court will dismiss Bruce's petition.

The incident which gave rise to this petition occurred at the Federal Prison Camp in Montgomery, Alabama. The prison camp admissions and orientation handbook, a copy of which Bruce received on November 13, 2007,[3] notified inmates that the unauthorized use or possession of cellular telephones was prohibited.

> The use of or possessing unauthorized cellular telephone(s) is strictly prohibited. Unauthorized cellular telephones are considered hazardous tools. Using a cellular telephone, without the ability of staff to monitor the call, enables an inmate to plan an escape or to make threats to civilians, or plan

---

[1]　　Pet. 5-6 [Doc. No. 1].

[2]　　Resp. 3-5 [Doc. No. 3].

[3]　　Resp. Ex. 3, Attach. G (Intake Screening Form) [Doc. No. 3-4].

other potential criminal acts in the local community, which could potentially harm civilians in the community. Therefore, the use of a cellular telephone, by an inmate in a federal prison, is the use of a tool which is hazardous, Code 108.[4]

On March 19, 2009, a staff member at the prison camp entered Bruce's cube and discovered an unauthorized cellular phone underneath a jacket on a chain.[5] Numbers on the telephone's "recent calls screen" matched numbers on Bruce's approved phone list. As a result of these discoveries, the employee prepared an incident report charging Bruce with possession of a hazardous tool, Code 108. Bruce received a copy of the incident report that same day.[6]

The Unit Disciplinary Committee ("UDC") conducted an initial hearing on March 19, 2009, and referred the charge to a Disciplinary Hearing Officer ("DHO") for a second hearing. The UDC advised Bruce that, at his second hearing, he was entitled to a staff representative and he had the right to call witnesses and present documentary evidence. Bruce declined the offer of staff assistance and the opportunity to call witnesses or present documentary evidence at the hearing.

The DHO conducted Bruce's second hearing on March 27, 2009.[7] After the DHO advised Bruce of his rights, Bruce admitted that, although he knew prison camp rules prohibited cellular phone possession or use, he had wrongfully possessed and used such a device to call friends.

---

[4] Resp. Ex. 3, Attach. F (Extract, FPC Montgomery Admissions & Orientation Handbook) [Doc. No. 3-4].

[5] Resp. Ex. 1, Attach. B (Incident Report) [Doc. No. 3-3].

[6] *Id*.

[7] Resp. Ex. 1, Attach. A (Discipline Hearing Officer Report) [Doc. No. 3-3].

> Inmate Bruce said staff found the cellular telephone in his room and that it had been there since approximately 11:00 p.m., that night. He said he was charging the telephone. He said he called female friends and his wife. . . . He said the ear piece was under the pillow. He said he knew he was not allowed to have the items.[8]

After considering the evidence, the DHO found that Bruce had committed the prohibited act as charged. The DHO explained that he based his decision on Bruce's admission of guilt; photographic evidence of the cellular phone, charger, and earpiece; and a correctional officer's statement.

> [T]he memorandum provided by R. Hollenquest, Correctional Officer, . . . states on March 19, 2009, while transporting you to the Elmore County Jail, he questioned you about the telephone. You said you got it from one of your home boys who had left, and that you had the telephone for approximately two weeks.[9]

After also finding that Bruce's possession of a cellular phone jeopardized the institution's security, the DHO imposed thirty days of disciplinary segregation, disallowed forty days of good conduct time, took away 365 days of visiting and telephone privileges, and ordered his disciplinary transfer to a more secure facility.[10] The DHO then suspended the disciplinary segregation pending 180 days of good conduct.

At the conclusion of the hearing, the DHO advised Bruce of his right to appeal within twenty calendar days under the administrative remedies procedure.[11] The DHO delivered a

---

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

written copy of his decision and disposition to Bruce on April 6, 2009.[12]

In his petition, Bruce asserts the disciplinary process violated his due process rights and the Bureau of Prisons did not permit the sanctions imposed. Bruce argues Bureau policies did not specifically prohibit inmates from possessing cellular telephones and Bureau documents did not identify cellular telephones as hazardous tools. He claims he had "rights" to visits and telephone calls and maintains Bureau policies did not permit a DHO to take these rights away. Bruce also declares Bureau staff did not provide him with the required forms to file an appeal while in-transit from Alabama to Texas.

> After the DHO's paperwork had been received by both Petitioner and staff at Atlanta, Petitioner again requested both in writing and orally for the proper form to appeal the DHO's decision. These requests were implicitly denied since Petitioner was not provided with the forms. Moreover, BOP Policy requires that Petitioner files his appeal within twenty (20) days after the DHO's decision. At the time that petitioner received the DHO's findings and punishments imposed, the twenty day time limit had expired.[13]

In his response, Respondent maintains Bruce failed to exhaust his administrative remedies.[14] He explains the Bureau will permit a prisoner additional time to file an appeal where "a situation . . . prevented the inmate from submitting the request within the established time frame."[15] Such a situation could include a delay due to "an extended period in-transit during which the inmate was separated from documents needed to prepare the Request or Appeal."[16]

---

[12] *Id.*

[13] Pet 7 [Doc. No. 1].

[14] Resp. 3-5 [Doc. No. 3].

[15] Resp. Ex. 2, Atch. E (Extract, Bureau of Prisons Program Statement 1330.16, Administrative Remedy Program, Sec. 8(b), p. 5 [Doc. No. 3-4].

[16] *Id.*

Respondent includes a declaration prepared by Mike Flagor, a paralegal specialist with the Federal Detention Center in Houston, Texas with access to the Bureau's SENTRY administrative remedy database. Flagor reports his review of the database revealed "that the petitioner has not filed any administrative remedies with the Regional Director or the General Counsel while incarcerated with the Bureau of Prisons."[17]

An initial issue which the Court must address in reviewing a § 2241 petition is whether the petitioner has exhausted his administrative remedies. This is because a federal prisoner must typically exhaust his administrative remedies before seeking habeas relief.[18] Exhaustion requires the petitioner to "fairly present all of his claims" through appropriate channels prior to pursuing federal habeas relief.[19] Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency."[20] In this regard, "[w]hen an agency has the opportunity to correct its own errors, a judicial controversy may well be mooted, or at least piecemeal appeals may be avoided."[21] Additionally, "exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration."[22] These concerns apply with particular force "when the action under review involves exercise of the agency's discretionary

---

[17] Resp. Ex. 2 (Declaration of Mike Flagor) [Doc. No. 3-4]

[18] *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam) (addressing exhaustion in context of a § 2241 challenge by a federal prisoner to a parole decision).

[19] *Dickerson v. Louisiana*, 816 F.2d 220, 228 (5th Cir. 1987) (addressing a § 2241 petition filed by a state pre-trial detainee).

[20] *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992).

[21] *Id.* (citing *Parisi v. Davidson*, 405 U.S. 34, 37 (1972); *McKart v. United States*, 395 U.S. 185, 194 (1969)).

[22] *Id.* (citing *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).

power or when the agency proceedings in question allow the agency to apply its special expertise."[23]

Exhaustion requirements "may be subject to certain defenses such as waiver, estoppel or equitable tolling."[24] Furthermore, when "the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action," the petitioner need not exhaust his administrative remedies.[25] Such exceptions to the exhaustion requirement, however, "apply only in 'extraordinary circumstances,' and [the petitioner] bears the burden of demonstrating the futility of administrative review."[26] If a federal inmate carries his burden to demonstrate an applicable exception to the exhaustion requirement, he may obtain a merits ruling on his § 2241 petition despite a lack of exhaustion.[27]

The Bureau has a two-step administrative remedy process which a prisoner may use to obtain a formal review of a disciplinary action. A prisoner must first appeal the adverse disciplinary action to the appropriate regional director by filing a BP-10 form.[28] The regional director has thirty days to issue a response, which may be extended by an additional thirty days. The second and final step in the administrative review process is an appeal to the Office of

---

[23] *Id*. (citing *McKart*, 395 U.S. at 195).

[24] *Wright v. Hollingsworth*, 260 F.3d 357, 358 n.2 (5th Cir. 2001).

[25] *Fuller*, 11 F.3d at 62.

[26] *Id*.

[27] *Id*.

[28] 28 C.F.R. § 542.15(a).

General Counsel on a BP-11 form.[29]  The General Counsel has forty days to issue a response.[30]  If an inmate does not receive a response within the time allotted for a reply, he may consider the absence of a response a denial at that level and proceed to the next level.[31]  An inmate may seek relief in federal court only after he has exhausted all levels of the administrative review process.[32]

In this case, Bruce has not filed an administrative remedy form appealing the disciplinary proceeding, decision, or sanctions which he now challenges in his petition.[33]  Further, he has not filed an administrative complaint about the Bureau's purported failure to provide him with the necessary forms to file an appeal.  Bruce's assertions that he was in-transit, "the twenty day time limit had expired," and he "was not provided the forms,"[34] do not excuse his failure to pursue his claims in light of the Bureau's published policy permitting an extension for filing an appeal where "a situation . . . prevented the inmate from submitting the request within the established time frame."[35]  Moreover, Bruce's excuses do not rise to the level of extraordinary circumstances which would permit an exception to the exhaustion requirement.  Thus, as Bruce has failed to

---

[29]  *Id*.

[30]  *Id.* at § 542.18.

[31]  *Id*.

[32]  *See Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.").

[33]  *See* Resp. Ex. 2 (Declaration of Mike Flagor) ("I have reviewed the BOP SENTRY administrative remedy deatbase.  My review reveals that the petitioner has not filed any administratives with the Regional Director or the General Counsel while incarcerated with the Bureau of prisons.") [Doc. No. 3-4].

[34]  Pet. 7 [Doc. No. 1].

[35]  Resp. Ex. 2, Atch. E (Extract, Bureau of Prisons Program Statement 1330.16, Administrative Remedy Program, Sec. 8(b), p. 5 [Doc. No. 3-4].

exhaust his administrative remedies on any of the claims, and he has he has failed to establish that any exceptions apply which would excuse his failure to exhaust, his petition is subject to dismissal. Accordingly, the Court enters the following orders:

1. The Court **DISMISSES WITHOUT PREJUDICE** Petitioner Patrick Bruce's *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 for failure to exhaust his administrative remedies.

2. The Court **DENIES AS MOOT** all pending motions.

**SO ORDERED.**

**SIGNED** on this 23rd **day of December 2009.**

_____
**KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE**